**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BABYAGE.COM, INC. and | : | |
| THE BABY CLUB OF AMERICA, INC., | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 05-6792 |
| | : | |
| TOYS "R" US, INC., d/b/a Babies "R" Us, | : | |
| and BABIES "R" US, INC., | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| JAMES L. MCDONOUGH et al., | : | |
| individually and on behalf of all others | : | |
| similarly situated, | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 06-242 |
| | : | |
| TOYS "R" US - DELAWARE, INC., d/b/a | : | |
| Babies "R" Us, and BABIES "R" US, INC. | : | |
| et al., | : | |
| Defendants. | : | |

## EXPLANATION AND ORDER

### I.      Background

Babies 'R' Us ("BRU") is a large retailer of baby and juvenile products including strollers, high chairs, breast pumps, bedding, car seats, and infant carriers. It carries products manufactured by Britax, Peg Perego, Medela, Maclaren, Kids Line, Regal Lager, and Baby Bjorn (the "manufactuers"), among others. Smaller retailers like Baby Age and Baby Club (the "retailers") competed with BRU by undercutting BRU's prices in order to increase their sales volume. This

undercutting ceased when the manufacturers began to require the retailers to sell their goods at or above a certain price. The retailers, and various consumers (the "consumers") who allegedly paid more for baby products than they would have absent these pricing policies, complained that BRU orchestrated these arrangements in order to ward off competition.

The retailers and the consumers brought an action against BRU and the manufacturers, alleging that this scheme violated federal antitrust law and Pennsylvania common law. BRU and the manufacturers moved to dismiss the complaints in their entirety. On May 20, 2008, I issued an opinion (the "Opinion") denying those motions. Now, Defendants move to certify that ruling for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).


II.      **Discussion**

District-court orders ordinarily become appealable only upon a "final" judgment. § 1291; Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 545-546 (1949) (explaining "finality" analysis). However, Congress, through § 1292(b), instructs district courts to bring a very narrow class of non-final orders to the attention of the courts of appeal for possible immediate review.[1] That provision states that a district court shall certify an interlocutory order for immediate appellate review if the order involves (1) a "controlling question of law" (2) "as to which there is substantial ground for difference of opinion"; and (3) where an immediate appeal from that order "may materially advance the ultimate termination of the litigation." § 1292(b).

---

[1] Immediate review is only "possible" — and not mandatory — because § 1292(b) gives the court of appeals discretion to refuse to entertain an appeal even from a properly certified order.

My May 20, 2008 ruling denying the motions to dismiss is a non-final order. Therefore, if it meets the three § 1292(b) criteria, I must certify it as immediately appealable. Defendants argue that my relevant-market holding and harm-to-competition holding qualify the Opinion for § 1292(b) certification. However, as I will explain below, neither of these holdings brings the Opinion within that very narrow class of interlocutory orders.

## A.        Relevant market

In my Opinion, I set forth the following relevant-market legal standard:

> Plaintiffs must define their markets with reference to "reasonable interchangeability" and the "cross-elasticity of demand." <u>Queen City Pizza v. Domino's Pizza</u>, 124 F.3d 430, 436 (3d Cir. 1997). FN 3. And they must not allege a market that "clearly" fails to encompass all "interchangeable substitute products" even when granting Plaintiffs the benefit of "all factual inferences." <u>Id.</u>

> FN 3.        Two products are "reasonably interchangeable" if consumers can use each for the same purpose. "Cross-elasticity of demand" refers to the relationship between the price of one product and the demand of another. The cross-elasticity of demand between two products is high if an increase in one's price causes an increase in the other's demand. <u>See</u> Areeda ¶ 562.

Opinion at 3-4. I further held that these requirements are encapsulated by 1992 Department of Justice Merger Guidelines ("Guidelines") § 1.11, which states that the relevant market including a given product is the smallest set of products such that a hypothetical monopolist selling all of those products could profitably impose a "small but significant and nontransitory increase in price." Opinion at 4-5.

I also held that factual allegations going towards this substantive standard must be viewed through the pleading-standard lens of <u>Bell Atlantic v. Twombly</u>, 127 S. Ct. 1955 (2007):

> To survive a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a plaintiff must make a "short and plain statement" providing the "grounds" of his "entitlement to relief." <u>Twombly</u>, 127 S. Ct. at 1965 (quoting Rule 8(a)(2)). This requires more than a statement that is merely <u>consistent with</u> a valid theory of recovery. <u>Id.</u> The statement must include "enough factual matter (taken as true) to <u>suggest</u>" a right to relief. <u>Id.</u> (Parentheses in original) (emphasis added). That is, the statement must have "enough heft to show that the pleader is entitled to relief." <u>Id.</u> at 1966 (internal quotation marks omitted). It must "raise a right to relief above a speculative level." <u>Id.</u> at 1964.

Opinion at 3.

Defendants contend that my Opinion involves the question of whether a proffered market that satisfies the Guidelines test therefore automatically satisfies the reasonable-interchangeability prong of the Third Circuit's <u>Queen City Pizza</u> test. Defs.' Mot. at 6-7. They further contend that this is a "controlling question of law" and that "substantial grounds for difference of opinion" exist as to how to resolve that question. I will assume, without deciding, that my Opinion does involve this question and that this question is a controlling question of law. I will explain, however, that there is no disagreement as to how this question should be resolved.

Defendants argue that substantial grounds for disagreement are provided by the conflict between my holding and the statement in <u>Queen City Pizza</u> that "[w]hen assessing reasonable interchangeability, factors to be considered include price, use, and qualities." Defs.' Mot. at 7 (citing <u>Queen City Pizza</u>, 124 F.3d at 437). Defendants' argument is unpersuasive, however, because there is no conflict: This statement from <u>Queen City Pizza</u> actually underscores that case's consistency with my holding regarding the Guidelines test. The Guidelines test incorporates the <u>Queen City Pizza</u> factors of product price, product use, and product qualities. This is because a proffered market generally will not pass the Guidelines test if it excludes a product with price, uses, and qualities similar to the price, uses, and qualities of those it includes. In such a situation, a small but significant

4

and nontransitory increase in the price of all in-market products will drive consumers to buy the similar-use, similar-qualities, and now-lower-price out-of-market product. That is, a small but significant and nontransitory increase in the price of all in-market products will not be profitable, and the Guidelines test will not be satisfied.

As Plaintiffs correctly observe, the real thrust of Defendants' argument appears to be disagreement with how I applied the Guidelines test, not with the validity of the test itself. Pls.' Resp. at 14-16. For example, Defendants suggest that my application of the Guidelines test allowed Plaintiffs to satisfy the relevant-market requirement despite pleading "literally no facts at all" regarding retail consumer behavior. Defs.' Reply at 6-7. Similarly, Defendants contend that "Plaintiffs have not alleged any facts that would satisfy their burden" under the Guidelines test. Defs.' Mot. at 7. But objections like these do not involve "controlling questions of <u>law</u>." They are merely quarrels over my application of the correct <u>Queen City Pizza</u> substantive standard — and its interaction with the <u>Twombly</u> pleading standard — to the facts of this case. Such error correction cannot serve as the basis for a § 1292(b) interlocutory appeal. <u>See, e.g.</u>, <u>Glaberson v. Comcast</u>, 2006 WL 3762028, at *13-14 (E.D. Pa. Dec. 19, 2006) (Padova, J.) (in Sherman § 1 antitrust case, denying motion to certify an order denying motion to dismiss for § 1292(b) interlocutory appeal where gravamen of objection was application of legal standard rather than disagreement with that standard); <u>Behrend v. Comcast</u>, 2007 WL 2702347, at *2 (E.D. Pa. Sept. 11, 2007) (Padova, J.) (same).

**B.      Harm to competition**

In my Opinion, I set forth the following harm-to-competition legal standard:

>        The third element of Sherman § 1 claim is that the concerted action at issue was anticompetitive. That is, the concerted action at issue must have harmed the entire relevant market as a whole. Plaintiffs may allege the anticompetitive nature of the concerted action by alleging actual harm to competition. FTC v. Indiana Fed'n of Dentists, 476 U.S. 447, 460 (1986). Hallmarks of such actual harm include an increase in retail prices above and beyond what they would be under competitive conditions, a reduction in output below what it would be under competitive conditions, and a deterioration in quality and service. Angelico v. Lehigh Valley Hosp., 184 F.3d 268, 276 (3d Cir. 1999). Further, binding precedent gives no indication that harm only to interbrand — as opposed to intrabrand — competition may suffice. Indeed, the U.S. Supreme Court and the leading treatise in the field expressly recognize that harm to intrabrand competition is cognizable when brought about by the demands of a "dominant" retailer, one that has market power in the retail sales market and one upon whom each manufacturer depends for a large portion of its sales. Leegin v. PSKS, 127 S. Ct. 2705, 2717, 2719-2720 (2007); Areeda ¶¶ 1601(17), 1604.

Opinion at 9-10.

I also held that allegations going towards any of these substantive elements must satisfy the

pleading standard set forth in Twombly, 127 S. Ct. 1955:

>        To survive a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a plaintiff must make a "short and plain statement" providing the "grounds" of his "entitlement to relief." Twombly, 127 S. Ct. at 1965 (quoting Rule 8(a)(2)). This requires more than a statement that is merely consistent with a valid theory of recovery. Id. The statement must include "enough factual matter (taken as true) to suggest" a right to relief. Id. (Parentheses in original) (emphasis added). That is, the statement must have "enough heft to show that the pleader is entitled to relief." Id. at 1966 (internal quotation marks omitted). It must "raise a right to relief above a speculative level." Id. at 1964.

Opinion at 3.

Defendants argue that my Opinion involves the question of whether allegations of market

harm caused by minimum resale price maintenance procured at the behest of a dominant retailer may

6

satisfy the harm-to-competition element of a Sherman § 1 claim. Defs.' Mot. at 3-5. They further

contend that this is a "controlling question of law" and that "substantial ground for difference of

opinion" exist as to how to resolve that question. I will assume, without deciding, that my Opinion

does involve this question and that this question is a controlling question of law. I will explain,

however, that there is no disagreement as to how this question should be resolved.

Defendants argue that substantial grounds for disagreement are provided by the conflict

between my holding and the Supreme Court's recent decision in Leegin. Defendants' argument is

unpersuasive because, like the relevant-market issue addressed above, there is no conflict. Simply

put, Leegin expressly recognized that abuse of minimum resale price maintenance procured at the

behest of a "dominant retailer" is one of the very types of anticompetitive conduct cognizable in a

Sherman § 1 claim:

> Resale price maintenance, furthermore, can be abused by a powerful manufacturer or retailer. A dominant retailer, for example, might request resale price maintenance to forestall innovation in distribution and decrease costs. A manufacturer might consider it has little choice but to accommodate the retailer's demands for vertical price restraints if the manufacturer believes it needs access to the retailer's distribution network.

Leegin, 127 S. Ct. at 2717 (internal citations omitted). Far from generating grounds for disagreement,

this passage of Leegin indicates that my recitation of the harm-to-competition legal standard tracked

binding precedent.

Defendants rightly observe that "Leegin created a sea change in the standards governing RPM

cases" and therefore may not yet have been thoroughly digested by all the regional circuit courts of

appeal. Defs.' Mot. at 2. But, the novelty of the governing case law does not present the "substantial

grounds for difference of opinion" required by § 1292(b). Indeed, in In re Powell, 2006 WL

3208843, at *1 (E.D. Pa. Nov. 3, 2006), Judge DuBois refused to find § 1292(b) grounds for

disagreement in a case involving a legal standard handed down by the Supreme Court fewer than four months before the order sought to be certified was issued. <u>Leegin</u>, on the other hand, was handed down nearly one year before my May 20, 2008 ruling.

As was the case with respect to the relevant-market issue, Defendants really appear to argue that I misapplied <u>Leegin</u>. They argue that my findings that "Plaintiffs have alleged that the minimum RPM scheme caused prices for the manufacturers' goods to increase beyond competitive levels" and that "Plaintiffs have alleged that those RPM policies blocked certain sales that otherwise would have been made, and in some cases caused sales to be made less rapidly than they otherwise would have been" are not indicative of the sort of harm to competition <u>Leegin</u> requires of a Sherman § 1 plaintiff. Defs.' Mot. at 4 (quoting Opinion at 10). But again, these are gripes with my application of the <u>Leegin</u> harm-to-competition standard, not with the correctness of the standard itself. Objections like these do not trigger § 1292(b) interlocutory review.

## III.    Conclusion

Thus, because Defendants have identified no controlling questions of law with substantial grounds for disagreement, § 1292(b) certification is improper. This is not to say that a litigant in Defendants' circumstances has no way to obtain review of a district court's decision before a final judgment is entered. Such a litigant could have filed — as Kids Line did file — a motion for reconsideration of clear errors of law, which encompasses errors made in applying the relevant legal standard.[2] However, those errors may not serve as the basis for § 1292(b) interlocutory appeal.

---

[2] Kids Line's motion was denied on July 3, 2008.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BABYAGE.COM, INC. and | : | |
| THE BABY CLUB OF AMERICA, INC., | : | |
|     Plaintiffs, | : | CIVIL ACTION |
| | : | |
|     v. | : | No. 05-6792 |
| | : | |
| TOYS "R" US, INC., d/b/a Babies "R" Us, | : | |
| and BABIES "R" US, INC., | : | |
|     Defendants. | : | |

| | | |
|---|---|---|
| JAMES L. MCDONOUGH et al., | : | |
| individually and on behalf of all others | : | |
| similarly situated, | : | |
|     Plaintiffs, | : | CIVIL ACTION |
| | : | |
|     v. | : | No. 06-242 |
| | : | |
| TOYS "R" US - DELAWARE, INC., d/b/a | : | |
| Babies "R" Us, and BABIES "R" US, INC. | : | |
| et al., | : | |
|     Defendants. | : | |

## <u>ORDER</u>

    **AND NOW**, this ___15th ____ day of ___July____, 2008, it is **ORDERED** that

Defendants' Motion to Certify Order for Interlocutory Appeal (05-6792 doc. # 340; and 06-242

doc. # 383) is **DENIED**._____

_____s/Anita B. Brody

                                                     ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:        Copies **MAILED** on _____ to: