B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BABYAGE.COM, INC., *et al.*, | : | |
| | : | |
| Plaintiffs, | : | No. 2:05-cv-6792-AB |
| | : | |
| v. | : | |
| | : | |
| TOYS "R" US, INC., | : | |
| d/b/a Babies "R" Us, *et al.*, | : | |
| | : | |
| Defendants. | : | |

PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANT
PEG PEREGO'S INTERROGATORY NO. 7

## INTERROGATORY NO. 7

State specifically the basis for and amount of all monetary damages or financial loss you claim as a result of any wrongful conduct alleged in the Baby Age.com Complaint or the Class Action Complaint, identify each person consulted or document reviewed or relied upon in determining your claim, and, if your claim involves any computations or estimations, provide a detailed description of them, including a specification of all assumptions and methodologies employed in making them.

## SUPPLEMENTAL RESPONSE OF PLAINTIFF BCA

1.    **Individuals at BCA involved in determining damage calculations:**

Dean Letendre, Comptroller
Meha Maniar, Director of Purchasing and Administration
Joe Randazzo, President

2.    **General computation, estimation and assumption sources:**

BCA Quickbooks data (purchasing)

Mail Order Wizard transaction data base (sales)
Dr. Russell Lamb's Expert Report
Management's knowledge and understanding of the baby products industry
Exhibit 'Randazzo 34' 4/14/10

**3.   Lost profits of add-on business from but-for defendant product sales**

   **a.   Specific sources**

   - 2002 Quickbooks data to determine product mix of Perego highchairs, strollers and car seats.
   - 2002 Quickbooks data to determine product mix of Perego add-on accessories that would be considered add-on sales for highchairs, strollers and car seats.
   - 2002 Quickbooks data to determine product mix of non-Perego add-on accessories that would be considered add-on sales for highchairs, strollers and car seats.
   - 2002 Quickbooks data to estimate average unit selling price for the products evaluated.
   - Dr. Russell Lamb's Expert Report (but-for sales and gross margin)
   - Management's knowledge, understanding, and experience in the baby products industry

   **b.   Calculations:**

   - Overall Units of Lost Sales:
     Lost sales are the but-for sales (from Dr. Lamb's report) minus the actual sales.

     Perego products:  Lost sales = $5,338,836 - $1,705,897 = $3,632,939

   The percentage of BCA's total Perego sales dollars for each product in 2002 was:

   | High chairs: | 20% |
   |---|---|
   | Strollers: | 60% |
   | Car seats: | 20% |

   The total lost unit sales for the full damages period (92 months) is the total dollar value of lost sales for that type of product times the percentage of BCA's total Perego sales for each product, divided by the average retail price of each item:

   | High chairs: | Lost units = (.20 * $3,632,939) / $160 avg retail | = 4,541 |
   |---|---|---|
   | Strollers: | Lost units = (.60 * $3,632,939) / $260 avg retail | = 8,384 |
   | Car seats: | Lost units = (.20 * $3,632,939) / $110 avg retail | = 6,605 |

2

- Peg Perego Highchairs:
  Activity Tray/Toys $25
  Floor Mat $15
  Plates, utensils etc $25

Assumption: 37.4% of high chair purchasers will buy one or more of these add-ons. For this calculation, we used a retail value of $28.55 worth of add-ons.

Calculation:  4,541 units x $28.55 = $129,646 x 26% GM = $33,708 x 37.4% of buyers = $12,607

- Peg Perego Strollers:
  -Travel Bag $80
  -Cup Holder $15
  -Stroller Toys $20
  -Rain Shield $20
  -Stroller organizer bag/diaper bag $35
  -Bug netting $10
  -Adapter for car seat $40

Assumption: 29.03% of Peg Perego stroller buyers will buy one or more of these add-ons. For this calculation, we used a retail value of $22.55.

Calculation: 8,384 units x $22.55 = $189,059 x 26% GM = $49,155 x 29.03% = $14,270

- Peg Perego Infant Car Seats
  -Extra Base $79
  -Bug netting $20
  -Toys $20

Assumption: 70.19% of Perego infant car seat buyers will buy one or more of these add-ons.  For this calculation, we will use a retail value of $41.29.

Calculation:  6,605 units x $41.29 = $272,720 x 26% GM = $70,907 x 70.19% of buyers = $49,770

Total Damages From Lost Add-On Sales:  $76,647

4.   **Lost repeat and registry profits on but-for defendant sales customers (minus already calculated add-on sales)**

a.   **Specific sources:**

-Dr. Russell Lamb's Expert Report
-Mail Order Wizard transaction data (1999 – 2009)

3

-Management's knowledge, understanding, and experience in the baby products industry

Assumption: But-for sales of all defendant manufacturers' products generate approximately 30,000 new customers per year of which 20% are real world repeat customer buyers. Each of these 6,000 customers generates an average of $385 in additional revenue per year, for a total of $2,310,000 of additional revenue.

The total add-on sales for all defendants from Ex. Randazzo 34 were $1,426,154. Because we recalculated the Perego add-ons, we subtracted the original Perego add-on figure from this total and then added back the revised Perego figure (which was $6,065 lower than the first estimate), yielding a total revised lost add-on profits of $1,420,089.

.The total lost profits on these 6,000 customers are $2,310,000 x 26% GM = $600,600 per year, or $50,050/mo x 92 mo = $4,604,600 minus the already calculated add-on sales of $1,420,089 = $3,184,511.

**b.      Calculation:**

Perego's percentage of lost but-for sales dollars (per Dr. Lamb's report) is 8.24%. $3,184,511 x 8.24% = <u>$262,404.</u>

**5.      Lost profit from year-end rebates**

**a.      Specific sources:**

-Dr Russell Lamb's Expert Report
-Peg Perego's year-end rebate program for BCA in effect during but-for period

**b.      Calculation:**

Net lost sales are but-for sales of $5,338,836 minus actual sales of $1,705,897 = $3,632,939.
3% rebate on net lost sales = <u>$108,988.</u>

**6.      Lost profits from lost memberships**

**a.      Specific sources:**

-Mail Order Wizard transaction data
-Dr Russell Lamb's Expert Report

BCA's memberships peaked at 4,700/yr before Defendants began demanding that their products be excluded from memberships. After the Defendants' demands, there was a steady but

dramatic decline in memberships. During the time period used in the Lamb report, memberships averaged 1,260 per year. Membership fee was $25 per year or $50 for 3 years. For this exercise, we are using only one-year memberships and not accounting for any renewals year over year. Total memberships sold using peak year of 4,700 less actual average of memberships sold during but-for period is 1,260 per year.

### b. Calculation:

4,700 but-for memberships per year – 1,260 actual memberships per year = 3,440 lost memberships per year, or 286/month x 92 months = 26,312 total lost memberships.

26,312 x $25 membership fee = $657,800* total lost membership fees.
    *Note: Did not account for revenue from membership renewal fees.

Perego's percentage of lost but-for sales dollars (per Dr. Lamb's report) is 8.24%.
Calc: $657,800 x 8.24% = $54,203.

Note that this estimate is conservative: Perego was one of the first defendants to demand that its products be excluded from memberships and one of the most aggressive about policing this policy. Thus, in real life Perego was probably responsible for a disproportionate share of the decline in memberships.

### 7. Lost profits from non-defendant customer sales

This figure estimates the total amount of growth in BCA's business that would have occurred if it had been able to continue selling Perego products without restriction, beyond the lost sales of Perego products themselves and the lost repeat customer sales and membership fees discussed in #4 and #6 above.

### a. Specific sources:

Dr. Russell Lamb's Expert Report
Mail Order Wizard transaction data (2002)

Assumption: Non-defendant customers accounted for 48% of new customers per year in our real world data. If Dr. Lamb's but-for revenue from all defendants is $56,613,992,

and that number would have contributed 52% of our total but-for revenue, then our total lost sales would be $108,873,062. 48% of the total is non-defendant, but-for revenue, or $52,259,070.

**b.     Calculation:**

Lost profits on those lost non-defendant sales of $52,259,070 using the but-for average GM of 26% is $13,587,358, less $657,800 in membership fee calculated in #6 above = $12,929,558, less $3,184,511 in lost repeat and registry profit from but-for initial defendant sales calculated in #4 above = $9,745,047.

Perego's percentage of lost but-for sales dollars (per Dr. Lamb's report) is 8.24%.

Calc: $9,745,047 x 8.24% = $802,992.

TOTAL ADDITIONAL DAMAGES: $1,305,234

**SUPPLEMENTAL RESPONSE OF PLAINTIFF BA**

**1.     Individuals at BA involved in determining damage calculations:**

John Kushmerick

Jack Kiefer

**2.     Lifetime Value (LTV) Calculation**

The Customer Lifetime Value Calculations for Peg Perego were derived by first determining the subset of customers that placed an order for Peg Perego products, along with the date of their first order placed including items from that Brand. The Total Product Revenue from each customer's initial order for Peg Perego and all subsequent orders placed by the customer after the first Peg Perego purchase date were totaled for each customer to calculate the LTV for that customer. The Peg Perego Average LTV was then calculated by taking the average LTV of all customers who purchased Peg Perego products.

**3.     Estimated Total Number of Lost Customers Calculation**

The Estimated Lost Customers Calculations were derived by taking the percentage of Unique Customers for the Sample Period described in Dr. Lamb's expert report (September 2003 through February 2004) for Peg Perego as compared to the Total Unique BabyAge Customers for All Brands for the same period. The data reveal that 3.74% of Unique Customers during the Sample Period purchased Perego products.

The Sample Period % of Total Customers for Peg Perego products (3.74%) was then applied forward on a monthly basis, by multiplying by the Total Unique Customers for All Brands for each month by 3.74% (to estimate the total sales for that month that would have been Peg Perego products) and then subtracting out the Unique Customers for Perego products (the "real-world" Perego customers), giving an Estimated Number of Lost Customers for each month from the end of the Damages Period. The Monthly Estimated Total Lost Customers was then added up to derive the Estimated Total of Lost Customers for Peg Perego.

**4.     Estimated Lost Revenue Calculation**

The Estimated Lost Revenue was calculated by taking the Estimated Total Number of Lost Customers and multiplying by the Customer Lifetime Value for Peg Perego.

**5.     Average Non-Peg Perego Gross Margin for Sample Period Calculation**

The Non-Peg Perego Gross Margin for the Damages Period was calculated by taking the Actual Product and Freight Revenue for Non-Peg Perego Items and Subtracting the Actual Product Unit Costs and Actual Outbound Freight Costs for the Non-Peg Perego Items for the Sample Period (9/1/2003 through 2/29/2004), then Dividing the Result by the Actual Product and Freight Revenue for Non-Peg Perego Items for the Sample Period.

**6.     Estimated Lost Gross Profit Calculation**

The Estimated Lost Gross Profit was determined by taking the Average Non-Peg Perego Gross Margin for the Sample Period and multiplying by the Estimated Lost Revenue.

7.    **Calculations**

## Peg Perego - Summary of Non-Peg Perego Lost Gross Profit

| | |
|---|---|
| Sample Period % of Total Customers: | 3.74% |
| Estimated # of Lost Customers: | 38,494 |
| Avg LTV / Customer for Non-Peg Perego items: | $103.58 |
| Estimated Lost Gross Revenue: | $3,987,363.00 |
| Avg Non-Peg Perego  Gross Margin % for Sample Period: | 35.00% |
| Estimated Lost Gross Profit: | $1,395,577.05 |

*Sample Period is Defined as 9/1/2003 through 2/29/2004

Subject to the penalties of perjury I state that the information that is contained in my company's section of the foregoing Supplemental Response To Defendant Peg Perego's Interrogatory No. 7 is true and correct to the best of my knowledge, information, and belief.

DATED:     December 15, 2010

Joseph Randazzo
The Baby Club of America, Inc.
738 Washington Ave.
West Haven, CT 06516
Tel 203-931-7760
Fax 203-933-1147

Subject to the penalties of perjury I state that the information that is contained in my company's section of the foregoing Supplemental Response To Defendant Peg Perego's Interrogatory No. 7 is true and correct to the best of my knowledge, information, and belief.


DATED:      December 15, 2010


Jack Kiefer
BabyAge.com, Inc.
360 Stewart Road
Wilkes-Barre, PA 18706
Tel 570-706-8658
Fax 570-706-2459

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BABYAGE.COM, INC., et al.      :

                          :    No. 05-6792-AB

    v.                      :

                          :

TOYS "R" US, INC., et al.       :

                          :

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiffs' Supplemental Responses to Defendant Peg Perego's Interrogatory No. 7 was served on the date listed below, via electronic mail upon counsel for defendants listed below:

**Kendall Millard,**
**Barnes & Thornburg, LLP**
**11 South Meridian Street**
**Indianapolis, IN 46204-3535**
**kmillard@btlaw.com**

Dated: <u>December 15, 2010</u>       By: _____

Kendall S. Zylstra
**FARUQI & FARUQI, LLP**
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
(215) 277-5770
Attorney for Plaintiffs